1
2
3
4
5
6
7
8
9
10
11
12
13
14
15

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| LOCALS 302 AND 612 OF THE INTERNATIONAL UNION OF OPERATING ENGINEERS CONSTRUCTION INDUSTRY HEALTH AND SECURITY FUND, et al., <br><br> Plaintiffs, <br><br> v. <br><br> ACE PAVING COMPANY, INC., a Washington corporation, <br><br> Defendant. | Case No. 10-cv-896-JPD <br><br> ORDER GRANTING PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT |

16    I.    INTRODUCTION AND SUMMARY CONCLUSION

17        Plaintiffs, Local 302 of the International Union of Operating Engineers and three

18    Operating Engineers trust funds, move the Court for summary judgment against defendant Ace

19    Paving Co., Inc.  Dkt. 7; Dkt. 17.  Defendant opposes the motion.  Dkt. 15.  After careful

20    consideration of the plaintiffs' motion, defendant's opposition, plaintiffs' reply, and the balance

21    of the record, the Court GRANTS plaintiffs' motion for summary judgment.

22    II.    BACKGROUND

23        The relevant facts of this case, as set forth by the plaintiffs' briefs and supporting

24    documents, are uncontroverted by the defendant.  Plaintiff Operating Engineers trust funds (the

ORDER
PAGE - 1

"Trust Funds") are employee benefit plans governed by § 302(c)(5) of the Labor Management Relations Act of 1947 and the Employee Retirement Income Security Act of 1974 ("ERISA"). *See* 29 U.S.C. § 186(c)(5); 29 U.S.C. § 1001 *et seq.*, as amended (1988).  The Trust Funds provide medical, retirement, and training benefits to eligible employees.  *See* Dkt. 8 at 3 (Parmelee Decl.).  Specifically, the Trust Funds include the Locals 302 and 612 of the International Union of Operating Engineers - Construction Industry Health and Security Fund, the Locals 302 and 612 of the International Union of Operating Engineers - Employers Construction Industry Retirement Fund, and the Western Washington Operating Engineers - Employers Training Trust Fund.  *See* Dkt. 7 at 1.  Each Trust Fund was established by a written trust agreement (the "Trust Agreements").  *See* Dkt. 8 at 2 (Parmelee Decl.).

Individual employers bound by a collective bargaining agreement with plaintiff Local 302 of the International Union of Operating Engineers ("Local 302"), the 2007-2010 Operating Engineers Local 302 Master AGC Labor Agreement (the "Master Labor Agreement"), are required to promptly pay monthly contributions to the Trust Funds at specified rates for each hour of compensation the employer pays to its eligible employees.  *See id.*; *id.*, Ex. B.  The Master Labor Agreement and Trust Agreements provide that these "contributions shall be made on or before the fifteenth (15) day of the month following the month in which the hours were worked. . . ."[1]  *Id.*, Ex. B at 20, Ex. C at 12, Ex. D at 10, Ex. E at 4.  In addition, the Trust Agreements provide that an employer who is delinquent in making its required contributions to the Trust Funds must pay the unpaid contributions, as well as "liquidated damages in the sum of twelve percent (12%) of the amount of [the] delinquency," "interest at the rate of twelve percent

---

[1] Defendant mistakenly states, in its brief and supporting declarations, that its monthly contributions "were due on the 10th day of the month."  *See* Dkt. 15 at 2; *id.*, Ex. 2 at 2 (Mason Decl.).  This error appears immaterial, however, as defendant's contributions to the Trust Funds were several months, rather than days, late.

ORDER
PAGE - 2

(12%) per annum," attorneys' fees, and court costs relating to the collection of delinquent contributions. *See id.*, Ex. C at 13, Ex. D at 11, Ex. E at 5. The defendant is such an employer.

Defendant became bound to the Master Labor Agreement, as well as the three Trust Agreements, when it entered into an Operating Engineers Local 302 Compliance Agreement (the "Compliance Agreement") with Local 302 on October 31, 2003.[2] *See id.*, Ex. A; Dkt. 8 at 3-4. Defendant acknowledges that it is a party to the above-described agreements, and is therefore obligated to remit monthly contributions to the Trust Funds following work by its eligible Operating Engineers employees. *See* Dkt. 15, Ex. 2 at 2 (Mason Decl.). Moreover, defendant admits that its contributions to the Trust Funds for January through June 2010 "were not timely paid." *Id.* at 3.

On May 28, 2010, plaintiffs initiated this action against defendant to recover the unpaid contributions, liquidated damages, interest, attorneys' fees and costs.[3] *See* Dkt. 1 at 1-5; Dkt. 7 at 2; Dkt. 17 at 12; Dkt. 18 at 2 (Parmelee Decl.). Between July and September 2010, defendant paid the full amount of its delinquent contributions, although each payment was several months late. *See* Dkt. 8 at 7-8 (Parmelee Decl.); Dkt. 9 at 2 (Azus Decl.); Dkt. 17 at 9; Dkt. 18 at 2 (Parmelee Decl.). As a result, plaintiffs' motion for summary judgment seeks $30,435.47 for liquidated damages, $7,062.94 for interest, $3,060.00 for attorneys' fees, and $459.70 for costs. *See* Dkt.18 at 2 (Parmelee Decl.); *id.*, Ex. 2; Dkt. 19 at 1-2.

---

[2] Specifically, by signing the Compliance Agreement, the parties agreed to be bound by the 2003-2007 Associated General Contractors of Washington Agreement, as well as any successor agreement. *See id.* at 3 (Parmelee Decl.); *id.*, Ex. A at 1. The parties' relationship is currently governed by the Master Labor Agreement, which is the successor to the Associated General Contractors of Washington Agreement. *See id.* at 4; *id.*, Ex. B.

[3] Plaintiffs also initially sought to recover plaintiffs' delinquent union dues and Union Program amounts for January through June 2010. *See* Dkt. 7 at 1, 5, 8-9, 12. Since plaintiffs filed their opening brief, however, defendant paid all delinquent union dues and Union Program amounts. *See* Dkt. 18 at 1-2 (Parmelee Decl.). Thus, defendant's delinquent union dues and Union Program amounts are no longer at issue in this action, as interest and liquidated damages calculations pursuant to the Trust Agreements are only based upon late Trust Fund contributions. *See id.* at 2.

ORDER
PAGE - 3

Defendant concedes that it is liable for interest, attorneys' fees, and costs, and does not challenge plaintiffs' calculations.[4]  *See* Dkt. 15, Ex. 2 at 3 (Mason Decl.); Dkt. 17 at 9. Defendant contends, however, that the Trust Agreements' liquidated damages provisions constitute unenforceable penalties under state and federal common law, and that liquidated damages may not be awarded under ERISA if there are no remaining unpaid contributions at the time judgment is entered.  *See* Dkt. 15 at 4, 11.  For the reasons discussed below, the Court finds defendant's arguments unpersuasive.

III.   JURISDICTION

The parties have consented to this matter proceeding before the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636(c).  *See* Dkt. 11 at 3.  The Court has exclusive jurisdiction over this action pursuant to 29 U.S.C. §§ 1132(e)(1) and (f).  Venue is proper because the Trust Funds are administered in this district.  29 U.S.C. § 1132(e)(2).

IV.   DISCUSSION

A.   *Summary Judgment Standard*

Summary judgment is appropriate when, viewing the evidence in the light most favorable to the nonmoving party, there exists "no genuine issue as to any material fact" such that "the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  A material fact is a fact relevant to the outcome of the pending action.  *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986).  Genuine issues of material fact exist when the evidence would enable "a reasonable jury . . . [to] return a verdict for the nonmoving party."  *Id.*  In response to a summary

---

[4] Although defendant "does not dispute that it owes interest, 'reasonable' attorney's fees and costs" to the Trust Funds in this action, defendant also requests an award of attorneys' fees under 29 U.S.C. § 1132(g)(1) in the event that the Court finds "that 29 U.S.C. § 1132(g)(2) does not apply to this action."  Dkt. 15, Ex. 2 at 3 (Mason Decl.); *id.* at 14.  As discussed below, the Court finds that § 1132(g)(2), rather than § 1132(g)(1), governs this case, and therefore defendant is not entitled to attorneys' fees.

judgment motion that is properly supported, the nonmoving party may not rest upon mere

allegations or denials in the pleadings, but must set forth specific facts demonstrating a genuine

issue of fact for trial, and produce evidence sufficient to establish the existence of the elements

essential to his case.  *See* Fed. R. Civ. P. 56(e); *Celotex Corp. v. Cattrett,* 477 U.S. 317, 323

(1986).  A mere scintilla of evidence, however, is insufficient to create a factual dispute.  *See*

*Anderson,* 477 U.S. at 252.  To defeat a motion for summary judgment, the non-moving party

must make more than conclusory allegations, speculations, or argumentative assertions that

material facts are in dispute.  *T.W. Elec. Service, Inc. v. Pacific Elec. Contractors Ass'n,* 809 F.2d

626, 630-32 (9th Cir. 1987).

B.     *ERISA Governs the Liquidated Damages Provisions of the Trust Agreements*

Defendant asserts that, in addition to the economic downturn and resulting loss in

revenues, "the liquidated damages that the Operating Engineers have claimed and forced Ace to

pay over the past two years has been a principle (sic) cause of Ace being late in making its

payments" to the Trust Funds.  Dkt. 15, Ex. 2 at 4-5 (Mason Decl.).  Thus, defendant contends

that the liquidated damages provisions of the Trust Agreements operate as unenforceable

penalties under state and federal common law.[5]  *See id*. at 11.  To support this argument,

defendant relies upon the Washington Supreme Court's assertion that "the central inquiry is

whether the specified liquidated damages were reasonable at the time of contract formation . . .

by reference to the prospective difficulty of estimating the possible damages that would flow

from a breach."  *Watson v. Ingram*, 124 Wn.2d 845, 853 (1994).  Defendant also cites the Ninth

Circuit's decision in *Idaho Plumbers & Pipefitters Health & Welfare Fund v. United Mech.*

_____

[5] Although defendant states that the liquidated damages provisions require payment of 20% of the
delinquent contributions, as discussed previously, the three Trust Agreements actually provide that a delinquent
employer shall pay "liquidated damages in the sum of twelve percent (12%) of the amount of [its] delinquency. . . ."
*See* Dkt. 8, Ex. C at 13, Ex. D at 11, Ex. E at 5.

*Contractors, Inc.* as support for the proposition that a liquidated damages provision is void as a penalty under federal common law unless the harm caused by a breach is very difficult or impossible to estimate, and the amount fixed is a reasonable forecast of just compensation for the harm caused. 875 F.2d 212, 215 (9th Cir. 1989) (holding that ERISA's damages provision was inapplicable because the defendant had paid all contributions owed to the trust before the lawsuit was initiated). *See* Dkt. 15 at 11-14.

Defendant's reliance upon state and federal common law in this case is unavailing, because ERISA governs cases such as this one, where an employer owed contributions to an employee benefit plan at the time the lawsuit was initiated. *See* 29 U.S.C. § 1144(a) (providing that ERISA "shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan. . . ."); *Egelhoff v. Egelhoff*, 532 U.S. 141, 146 (2001) (observing that ERISA's preemption provision is "clearly expansive"); *General Am. Life Ins. Co. v. Castonguay*, 984 F.2d 1518, 1521 (9th Cir. 1993) ("ERISA's preemption clause is one of the broadest ever enacted by Congress, and it preempts even generally applicable laws, not just laws aimed exclusively at employee benefit plans. . . .") (internal citations omitted). ERISA provides specific remedies for delinquent contributions, including an award of "(A) the unpaid contributions, (B) interest on the unpaid contributions, (C) an amount equal to the greater of— (i) interest on the unpaid contributions, or (ii) liquidated damages provided for under the plan in an amount not in excess of 20 percent (or such higher percentage as may be permitted under Federal or State law) of the amount determined by the court under subparagraph (A), [and] (D) reasonable attorney's fees and costs of the action, to be paid by the defendant. . . ." 29 U.S.C. § 1132(g)(2).

ORDER
PAGE - 6

Furthermore, ERISA obligates participating employers to make contributions to a multi-employer trust fund in accordance with the terms of the trust agreement or collective bargaining agreement. *See* 29 U.S.C. §§ 1102(a), 1103(a), 1145. The language of a written trust agreement defines the rights and obligations of the parties to the trust to the extent they are consistent with ERISA. *Id.* at § 1145; *Santa Monica Culinary Welfare Fund v. Miramar Hotel Corp.*, 920 F.2d 1491, 1493-94 (9th Cir. 1990) (internal citations omitted). As noted above, the Trust Agreements provide that an employer shall pay liquidated damages of 12% of the amount of the delinquent contributions. *See* Dkt. 11, Ex. A at 8. Defendant has made no showing in these proceedings that this requirement is somehow inconsistent with ERISA, which provides for liquidated damages of up to 20% of any delinquent contributions.

Finally, the Ninth Circuit has held that § 1132(g)(2) is "mandatory and not discretionary." *Northwest Adm'rs Inc. v. Albertson's, Inc.*, 104 F.3d 253, 257 (9th Cir. 1996) (quoting *Operating Eng'rs Pension Trust v. Beck Eng'g & Surveying, Co.*, 746 F.2d 557, 569 (9th Cir. 1984)). Section 1132(g)(2) requires only that: "(1) the employer must be delinquent at the time the action is filed; (2) the district court must enter a judgment against the employer; and (3) the plan must provide for such an award." *Id.* (citing *Idaho Plumbers & Pipefitters Health & Welfare Fund*, 875 F.2d at 215).

Here, the Court finds that all three criteria for a mandatory award under § 1132(g)(2) are satisfied. Defendant admits that there were unpaid contributions at the time plaintiffs filed this lawsuit, and that the Trust Agreements provide for an award of liquidated damages. *See* Dkt. 15 at 4-5; *id.*, Ex. 2 at 2-3 (Mason Decl.). As discussed in greater detail below, with respect to the final factor, the Ninth Circuit has held that "mandatory fees are available under § 1132(g)(2) 'notwithstanding the defendant's post-suit, prejudgment payment of the delinquent contributions

themselves.'" *Albertson's*, 104 F.3d at 258 (quoting *Carpenters Amended & Restated Health Benefit Fund v. John W. Ryan Constr. Co.,* 767 F.2d 1170, 1175 (5th Cir. 1985)).

Accordingly, the state and federal common law cases cited by defendant are inapposite, as such law is preempted by ERISA. While the Court is sympathetic to defendant's apparent plight, defendant is obligated to pay liquidated damages as a result of its failure to timely pay contributions to the Trust Funds, regardless of its financial situation.

C.    *Liquidated Damages Are Available Pursuant to § 1132(g)(2) If Unpaid Contributions Existed at the Time the Lawsuit was Filed*

Defendant argues that ERISA is inapplicable to this case because a judgment for unpaid contributions is a necessary predicate for an award of liquidated damages under § 1132(g)(2). Dkt. 15 at 5. Specifically, defendant asserts that where "there are no remaining 'unpaid contributions' to enter a judgment on . . . no judgment may be awarded in favor of the plan for unpaid contributions." *Id*. at 6. Defendant relies upon statutory language providing for an award of liquidated damages "in an action to recover delinquent contributions . . . in which a judgment in favor of the plan is awarded. . . ." 29 U.S.C. § 1132(g)(2). Defendant also points to statutory language providing that a liquidated damages award may not exceed "20 percent . . . of the amount [of unpaid contributions] determined by the court under subparagraph (A). . . ." *Id*. § 1132(g)(2)(C)(ii). Defendant appears to concede that its interpretation of § 1132(g)(2) is at odds with Ninth Circuit precedent, but maintains that it "would be the correct holding" in this case. Dkt. 15 at 9.

As plaintiffs point out in their reply, defendant's arguments are unavailing because the Ninth Circuit has held that an employer is liable for mandatory fees under § 1132(g)(2), including liquidated damages, "notwithstanding the defendant's post-suit, prejudgment payment of the delinquent contributions themselves." *Albertson's*, 104 F.3d at 258. Significantly, the

ORDER
PAGE - 8

Ninth Circuit has expressly rejected defendant's argument that "a mandatory award under § 1132(g)(2) is improper because the employer voluntarily paid the delinquent contributions . . . thus the district court did not enter judgment against [the employer] relating to those contributions. . . ." *Id*. Instead, the court held that mandatory "[f]ees may be awarded even though there is no judgment on the merits or when the dispute has become moot because relief is otherwise obtained." *Id*. (citing *Lads Trucking Co. v. Board of Trustees of W. Conference of Teamsters Pension Trust Fund*, 777 F.2d 1371, 1375 (9th Cir. 1985)).

The Court declines defendant's invitation to interpret § 1132(g)(2) in a manner that is contrary to longstanding Ninth Circuit precedent. In doing so, the Court notes that with the exception of the Sixth Circuit, every Court of Appeals to consider the issue concurs with the Ninth Circuit's interpretation of § 1132(g)(2). *See UAW Local 259 Soc. Sec. Dep't v. Metro Auto Ctr.*, 501 F.3d 283, 288-89 (3d Cir. 2007) (providing that § 1132(g)(2) remedies apply to all contributions unpaid at the time a suit is filed, even if the debts are partially satisfied before judgment); *Operating Eng'rs Local 139 Health Benefit Fund v. Gustafson Constr. Corp.*, 258 F.3d 645, 654 (7th Cir. 2001) ("The interest and liquidated-damages provisions of ERISA apply . . . only to contributions that are unpaid at the date of suit (not the date of judgment, as argued by the defendant)."); *Iron Workers Dist. Council v. Hudson Steel Fabricators & Erectors, Inc.*, 68 F.3d 1502, 1507 (2d Cir. 1995) ("[T]he provisions of § 1132(g)(2)(B) and (C) make reference to unpaid contributions not to establish a limit on qualifying judgments, but rather because the amount of an award of interest or liquidated damages should logically be predicated upon the amount of the unpaid contributions originally at issue, whether or not outstanding at the time of judgment, since that amount correctly measures the damage caused by the delinquency."). *See also Carpenters & Joiners Welfare Fund v. Gittleman Corp.*, 857 F.2d 476, 478 (8th Cir. 1988)

ORDER
PAGE - 9

(agreeing that "unpaid contributions" accounted for in § 1132(g)(2) means "contributions unpaid at the time suit was filed[.]").

Thus, defendant's argument that § 1132(g)(2) is inapplicable to this case is unavailing. Pursuant to the Trust Agreements and § 1132(g)(2), plaintiffs are entitled to liquidated damages, interest, attorneys' fees and costs.

V.      CONCLUSION

For the reasons discussed above, the Court finds no issues of fact regarding plaintiffs' entitlement to the total amount of liquidated damages sought in this action, which equals 12% of the amount of defendant's delinquent contributions for the January through June 2010 employment periods.  Accordingly, the Court hereby ORDERS as follows:

(1)      Plaintiffs' motion for summary judgment, Dkt. 7, is GRANTED.

(2)      Judgment is awarded in favor of plaintiffs and against defendant in the following amounts: $30,435.47 for liquidated damages, $7,062.94 for interest, $3,060.00 for attorneys' fees, and $459.70 for costs.

(3)      The Clerk is directed to send copies of this Order to counsel for all parties.

DATED this 5th day of October, 2010.

_James P. Donohue_
_____
JAMES P. DONOHUE
United States Magistrate Judge

ORDER
PAGE - 10